UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD D. LAKE, as Trustee of the Richard
D. Lake Revocable Living Trust dated August
24, 2011,

       Plaintiff,

v.                              Case No:  2:20-cv-809-JLB-NPM

CHARLOTTE COUNTY, a political subdivision of
the State of Florida,

       Defendant.

_____

**<u>ORDER</u>**

Plaintiff Richard Lake sues Charlotte County (the "County") for a regulatory taking of his property without just compensation under the Fifth Amendment's Takings Clause.  (Doc. 40.)[1]  The First Amended Complaint ("Complaint") alleges that the County has denied him all or substantially all economically beneficial use of his property through land use regulations preventing the combined, commercial use of Mr. Lake's differently zoned parcels.  (<u>See, e.g.</u>, <u>id.</u> at 10, ¶ 52.)  Thus, Mr. Lake brings two alternating claims of inverse condemnation as to three specific parcels of land (<u>i.e.</u>, six claims) under <u>Lucas v. South Carolina Coastal Council</u>, 505

---

[1] Mr. Lake brings suit in his capacity as sole trustee of the Richard D. Lake Revocable Living Trust Dated August 24, 2011.  (Doc. 40 at 2, ¶ 2.)  For simplicity, this Order does not distinguish between the two, as any distinction does not affect the Court's analysis.

U.S. 1003 (1992), and <u>Penn Central Transportation Co. v. City of New York</u>, 438 U.S. 104 (1978).   (<u>Id.</u> at 13, 15, 17, 18, 20, 21.)

The County moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint "does not allege facts to support its bare conclusion[s]" that Mr. Lake suffered a taking under either <u>Lucas</u> or <u>Penn Central</u>.   (<u>See</u> Doc. 44 at 5–6, ¶¶ 11, 12.)   The Court agrees.   The Complaint does not include the necessary factual allegations supporting an inference that the County committed a taking of Mr. Lake's property through its land use regulations.   The Complaint instead relies on unsupported legal conclusions that Mr. Lake's property is without any economically beneficial use.   Mr. Lake, for these reasons, must file an amended pleading should he decide to maintain his claims in this Court.

The County also requests judicial notice of certain documents which ostensibly show that one of Mr. Lake's parcels was landlocked at the time of purchase through no fault of the County.   (<u>See id.</u> at 2–3, 25–26.)   The County therefore argues that Mr. Lake cannot plausibly allege any taking as to it.   (<u>Id.</u> at 3–4, ¶ 6.)   As the Court will explain, however, the County has misconstrued the Complaint' allegations.   Last, the County argues that the doctrine of res judicata bars Mr. Lake's claims here because he could have, but did not, bring his inverse condemnation claims in a previous state court proceeding that challenged the County's land use decisions.   (<u>Id.</u> at 23–25.)   But that argument is premature unless and until Mr. Lake files an amended pleading.   Accordingly, the County's

motion to dismiss (Doc. 44) is **GRANTED IN PART**, and the Complaint (Doc. 40) is **DISMISSED WITHOUT PREJUDICE** to Mr. Lake filing an amended pleading.

**BACKGROUND**

This dispute revolves around three plots of land that the Complaint identifies as Parcels A, B, and C.   (Doc. 40 at 2, ¶ 7.)   The Complaint includes an aerial photograph depicting the Parcels' locations:



(<u>Id.</u> at 3.)

Parcel A is vacant and zoned "Residential, single-family" ("RSF") and designated "Low Density Residential" on the County's Future Land Use Map.   (Doc. 40 at 3, ¶ 8.)   Parcel B is also zoned RSF and designated "Low Density Residential" but contains a single-family residence.   (<u>Id.</u> at ¶ 9.)   The vacant Parcel C, however, is zoned "Commercial General" and designated "Commercial."   (<u>Id.</u> at 3–4, ¶ 10.)

West of Parcel C is a commercial parking lot owned by Landy's Restaurant, and to the east is a body of water named Godfrey Creek.   (Id.)   McCall Road, a four-lane minor arterial road, abuts Parcel C to the north yet is physically inaccessible from Parcel C given the road's "super elevation."   (Id.)   The aerial shows a small strip of land running alongside McCall Road separating it and Parcel C.   (See id. at 3, ¶ 7.) Last, the "Point of Pines" residential community, consisting of about sixty-five homes (the "Residents"), is south of the Parcels.   (Id. at 4, ¶ 11.)

Mr. Lake bought Parcel C on May 12, 2015, believing he could access it from "the property north of the Landy's parking lot."   (Doc. 40 at 4, ¶ 12.)   After closing, he contacted the County about "developing access to Parcel C through the property north of the Landy's parking lot" only to learn that Parcel C was within the Florida Department of Transportation's ("FDOT") right-of-way for McCall Road, to which the FDOT would not grant him access.   (Id. at ¶ 13.)   The owner of Landy's Restaurant denied Mr. Lake's request for an easement over its parking lot, and Mr. Lake thereafter bought Parcels A and B on August 5, 2015.   (Id. at ¶¶ 14–15.)

Mr. Lake sought to build a driveway over the residential Parcels A and B to access the commercial Parcel C.   (Doc. 40 at 5, ¶ 17.)   "In or around late 2015 or early 2016," he contacted the County Planning and Zoning Division Staff ("County Staff") who explained that section 3-9-33(e) of the County's Land Development Code prohibited building a commercial driveway on residential property.   (Id.)[2]   The

---

[2]   A copy of the County's code can be found online at: https://library.municode.com/fl/charlotte_county/codes/code_of_ordinances?nodeId=PTIIILADEGRMA (last accessed Nov. 18, 2021).

commercial driveway was "not a permitted residential use under Section 3-9-33(a)-(b) of the LDC."   (Id.)   County Staff told Mr. Lake that he could apply to replat and rezone Parcels A and B from residential to commercial.   (Id. at ¶ 18.)   Mr. Lake thus prepared the necessary applications: (1) a Preliminary Plat Application; (2) a Comprehensive Plan Amendment; and (3) a Rezoning Application.   (Id. at ¶ 19.)[3]

Mr. Lake's Preliminary Plat Application proposed: (1) combining Parcels A and C into a single tract accommodating a driveway from Point of Pines Road across Parcel A to Parcel C; and (2) expanding Parcel B westward to Point of Pines Road. (Doc. 40 at 5–6, ¶ 19.)   Mr. Lake "did not submit a site plan or propose an intended commercial use for Parcel C but instead merely sought to install a driveway on Parcel A to access Parcel C."   (Id.)   The County Planning and Zoning Board and the Community Development Department recommended that the County Board of County Commissioners ("BOCC") approve the Preliminary Plat Application.   (Id. at 6, ¶ 20.)

The BOCC held a public hearing on February 28, 2017, at which "numerous" Residents appeared, commented on, and opposed Mr. Lake's applications.   (Doc. 40 at 6, ¶¶ 21–22.)   And while the BOCC approved the Preliminary Plat Application, it "unanimously denied the Comprehensive Plan Amendment Application which

---

[3] Florida requires municipalities and counties to adopt comprehensive plans, which include a number of elements like future land use designations.   See Fla. Stat. § 163.3167.   "The zoning of a property must be consistent with its land use designation under the prevailing comprehensive plan."   Weiss v. City of Gainesville, 462 F. App'x 898, 902 (11th Cir. 2012) (citing Gardens Country Club, Inc. v. Palm Beach Cnty., 590 So. 2d 488, 490 (Fla. 4th DCA 1991)).

mooted and caused the BOCC to not vote on the Rezoning Application."   (<u>Id.</u> at ¶ 23.)   Later, Mr. Lake met with the Residents and proposed that he limit the development on Parcel C to a "small multi-family residential development."   (<u>Id.</u> at 7, ¶¶ 25–26.)   When the Residents did not respond to Mr. Lake's proposal, he sued the County in Florida state court for denying his Comprehensive Plan Amendment Application, but the state court ruled against him, holding that the County's denial was within its discretion.   (<u>Id.</u> at ¶¶ 27–29.)   Around 2019, once more trying to "appease and pacify" the Residents, Mr. Lake proposed developing a "low intensity and low impact residential use on Parcel C: an assisted living facility ('ALF')."   (<u>Id.</u> at ¶ 30.)

However, Mr. Lake still needed approval for a commercial driveway over residential property and, because a variance was not permitted, he sought a special exception.   (Doc. 40 at 7, ¶¶ 31–32.)   He prepared a "conceptual site plan" for a forty-bed ALF on Parcel C "with access from Point of Pines Road over Parcels A and B" and submitted his special exception application to the Board of Zoning Appeals ("BZA") around April 2018.   (<u>Id.</u> at 8, ¶¶ 33–34.)   Although County Staff recommended that the BZA approve the special exception, subject to certain conditions, the BZA denied Mr. Lake's application "primarily based upon the misrepresentations made by one of the Residents and would be competitor."   (<u>Id.</u> at 8–9, ¶¶ 35–42.)

On July 17, 2019, Mr. Lake requested mediation with the County under a Florida law allowing property owners to challenge a "local government's

development order [that] unreasonably or unfairly burdens the use of their property."   (Doc. 40 at 9, ¶ 43.)   He also invited the Residents to the mediation. (Id. at ¶ 45.)   A settlement agreement was reached, subject to BOCC approval, by which the County would provide Mr. Lake his special exception in exchange for several conditions on the ALF's development.   (Id. at 9–10, ¶ 46.)   At a public hearing on December 10, 2019, the Residents opposed, and the BOCC ultimately rejected, the settlement agreement.   (Id. at 10, ¶¶ 48–51.)

Mr. Lake considered selling the Parcels around May 2020.   (Doc. 40 at 10–11, ¶ 53.)   To increase Parcels A and C's marketability and preserve access for any future development of Parcel C, he prepared a second Preliminary Plat Application which combined Parcels A and C into the designated Lot 1.   (Id.)   County Staff recommended approval of the merger provided that, among other things, Mr. Lake either: (1) resolve the Parcels' inconsistent zoning and designations; or (2) receive a special exception use of the Parcels.   (Id. at 12, ¶ 54.)   The BOCC held a public hearing on July 14, 2020 at which it "approved the Second Preliminary Plat Application by a vote of 3-2 and included the above-referenced condition[s] of approval."   (Id. at ¶¶ 55–57.)

Mr. Lake alleges that these conditions place him on a "denial merry-go-round" by "imposing a condition upon [Mr.] Lake that the County will not allow [him] to satisfy, thereby effectively preventing [him] from . . . install[ing] a commercial driveway on Parcel A, access Parcel C and commercially develop Lot 1."   (Id. at ¶ 59.)   In sum, Mr. Lake alleges that the County's actions "make clear

that it will not permit the economically beneficial use" of the Parcels and that it will "instead . . . use its regulatory powers to maintain the property as undevelopable open space in perpetuity at the behest of the Residents."   (Id. at ¶ 60.)

On these facts, the Complaint alleges six counts of inverse condemnation under the Fifth and Fourteenth Amendments to the United States Constitution as to Lot 1 (Counts I & II), Parcel C (Counts III & IV), and Parcel A (Counts V & VI). (Doc. 40.)   For each, Mr. Lake alternatively seeks relief under the Supreme Court's decisions in Lucas and Penn Central.

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."   Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).   To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."   Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003) (citation omitted).

## DISCUSSION

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."   U.S. Const. amend. V.   This curtailment of government power equally applies to the States through the Fourteenth Amendment.   Murr v. Wisconsin, 137 S. Ct. 1933, 1942 (2017).   "The right to improve property, of course, is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use restrictions." Palazzolo v. Rhode Island, 533 U.S. 606, 627 (2001) (citing Pa. Coal Co. v. Mahon, 260 U.S. 393, 413 (1922)).   "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law."   Pa. Coal Co., 260 U.S. at 413.

Even so, "government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster" and "such 'regulatory takings' may be compensable under the Fifth Amendment." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 538 (2005) (citation omitted).   "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."   Pa. Coal Co., 260 U.S. at 415.   Thus, Lucas and Penn Central, albeit through different standards, answer the same question—when does a regulation go "too far?"

The Court first addresses Mr. Lake's Lucas claims.   Second, the Court will analyze Mr. Lake's Penn Central claims.   Last, the Court will explain why the

County's request for judicial notice and argument concerning res judicata are not appropriate grounds for dismissing the Complaint.

I.   **Mr. Lake has not sufficiently alleged that the County deprived him of all economically beneficial use of his land**.

A regulation which completely deprives an owner of "all economically beneficial us[e]" of his property will constitute a per se taking under the Fifth Amendment.   Lucas, 505 U.S. at 1019.   "[T]he government must pay just compensation for such 'total regulatory takings,' except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property."   Lingle, 544 U.S. at 538 (citing Lucas, 505 U.S. at 1026–32).   "In the Lucas context . . . the complete elimination of a property's value is the determinative factor."   Id. at 539 (citation omitted); see also Lucas, at 1019 n.8 (stating that a landowner whose property value diminished 95% could not "claim the benefit of [Lucas's] categorical formulation").

Here, Mr. Lake has failed to proffer sufficient facts which show that the County's actions have deprived him of all economically beneficial use of Parcels A, C, and Lot 1.   As a reminder, the Complaint alleges that the County committed a taking through the "application of [its land use regulations] and repeated denials of [Mr.] Lake's land use applications," which "demonstrate that [the County] will not permit any economically beneficial use of Parcels A and/or C."   (Doc. 40 at 10, ¶ 52.) Each of Mr. Lake's applications sought to gain access to Parcel C through Parcel A so that he could commercially develop and use the two Parcels in conjunction, either by rezoning Parcel A or obtaining a special exception from section 3-9-33(e)'s

prohibition on commercial driveways over residentially zoned property.   (See id. at 5, 8, 9–10, 11–12.)   To state a Lucas claim under these facts, Mr. Lake must allege that the County's enforcement of section 3-9-33(e) and Parcel A's zoning designation—operating together—deny him all economically beneficial use of Parcels A, C, and Lot 1.   The Complaint, however, impermissibly relies on conclusory assertions from which the Court cannot reasonably infer a Lucas taking.

## A.      Parcel A

Beginning with Parcel A, Mr. Lake alleges that it "does not have any economically beneficial use other than commercial use consistent with the other commercial uses in the surrounding area."   (Id. at 20, ¶ 97.)   The only other allegation that arguably supports this conclusion is that "Parcel A is not reasonably adapted and, therefore, not economically viable for use as a single-family residence. Instead, the only economically viable use of Parcel A is to assemble it with Parcel C to enable integrated commercial use of both parcels."   (Id. at 5, ¶ 16.)   Mr. Lake contends that Parcel A's commercial surroundings prevent him from using Parcel A for residential purposes.   (See Doc. 49 at 4.)[4]   Putting aside that immediately next to Parcel A is a developed single-family residence on Parcel B, the reasonable inference to be drawn from Mr. Lake's allegations is that perhaps a home on Parcel A might not fetch as high a price as a home on Parcel B or elsewhere.   But "mere

---

[4] Mr. Lake notes that "Parcel A is located across from a waterfront commercial restaurant, Landy's, and abuts Landy's commercial parking lot to the north and is located within a commercial corridor located along McCall Road." (Doc. 49 at 4 (citing Doc. 40 at 2–3, ¶¶ 7–10).)

diminution in the value of property, however serious, is insufficient to demonstrate a taking."   Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal., 508 U.S. 602, 645 (1993) (conducting a Penn Central analysis). Although Mr. Lake may not view residential use of Parcel A as "economically viable," this does not mean that Parcel A has no value or use at all.   Accordingly, Mr. Lake's assertion that Parcel A is not "reasonably adapted" or "economically viable" for residential use is, at best, a "legal conclusion couched as a factual allegation," which the Court need not accept as true.   Papasan v. Allain, 478 U.S. 265, 286 (1986).

     Mr. Lake has thus failed to allege a regulatory taking under Lucas as to Parcel A, because he neglects to plead sufficient facts demonstrating that "the complete elimination of" Parcel A's value was caused by the County's land-use decisions.   Lingle, 544 U.S. at 539.

     **B.      Lot 1**

     As previously noted, the Complaint alleges that Mr. Lake proposed joining Parcels A and C by a driveway to create "Lot 1."   (Doc. 40 at 10–11, ¶ 53.) Considering that Parcel A composes a portion of the proposed Lot 1, Mr. Lake would still be able to make economically beneficial use of Lot 1 to the extent that he can use Parcel A.   See Murr, 137 S. Ct. at 1944 (noting that courts should not "limit the parcel [at issue] in an artificial manner to the portion of the property targeted by the challenged regulation").[5]   And, as noted above, Mr. Lake has not shown that

_____

     [5] The Court is analyzing Parcels A, C, and Lot 1 independently because that

the County's actions have deprived him of all economically beneficial use of Parcel A.   Moreover, Mr. Lake alleges that "to make Parcels A and C marketable to purchasers," it is necessary to combine them "to preserve access to Parcel C to accommodate future development plans."   (Doc. 40 at 10–11, ¶ 53.)   Notably, nothing in the Complaint alleges that the County prevented Mr. Lake from selling his property.   That the County's actions have resulted in Parcels A and C (i.e., Lot 1) being less "marketable" than Mr. Lake would desire, alone, does not constitute a taking.   Kirby Forest Indus., Inc. v. United States, 567 U.S. 1, 15 (1984) ("[I]n the absence of an interference with an owner's legal right to dispose of his land, even a substantial reduction of the attractiveness of the property to potential purchasers does not entitle the owner to compensation under the Fifth Amendment.").[6]

The Complaint therefore also fails to state a Lucas taking as to Lot 1.

### C.   Parcel C

Last, the Complaint alleges that the County's denial of Mr. Lake's applications seeking to access Parcel C through Parcel A "demonstrates that [the County] will not permit any economically beneficial use of [Parcel C]."   (Doc. 40 at 10, ¶ 52.)   Again, the most favorable construction of the Complaint's allegations shows only that the County has prevented Mr. Lake from accessing Parcel C from Parcel A and using the two Parcels in a combined, commercial manner (e.g., Lot 1).

---

is how Mr. Lake has structured his operative pleading.   However, for purposes of an amended pleading, Mr. Lake should note that the Court may treat his land as a single unit upon consideration of certain factors.   See Murr, 137 S. Ct. at 1944–46.

[6] The same can be said when analyzing Parcel A and Parcel C independently.

(See id. at 5–6, ¶ 19; id. at 7, ¶ 31; id. at 9–10, ¶ 46; id. at 10–11, ¶ 53.)   At most, Mr. Lake has shown that the County has deprived an economically viable use of Parcel C (e.g., combined, commercial use with Parcel A).   The Complaint does not otherwise establish that the County's "action[s] have made [Mr. Lake's] property worthless."  Agripost, Inc. v. Miami-Dade Cnty., ex rel. Manager, 195 F.3d 1225, 1231 (11th Cir. 1999).

Put differently, Mr. Lake has only been told that he cannot maintain a commercial driveway over residentially zoned land on his property.   He "has not been told that no development of [his] property is allowed."  Baytree of Inverrary Realty Partners v. City of Lauderhill, 873 F.2d 1407, 1410 (11th Cir. 1989) (discussing a regulatory taking under Penn Central).   Thus, "the Complaint fail[s] to state a claim that [Parcel C] was subject to [a Lucas] taking, as there is no indication in the Complaint that [the County's] determination stripped [Parcel C] of all productive use."  Etherton v. City of Rainsville, 662 F. App'x 656, 661 (11th Cir. 2016).

In sum, the Complaint alleges that the County has prevented Mr. Lake from developing a commercial driveway to access and use Parcel C in a combined commercial manner with Parcel A.   What the Complaint fails to allege, however, are facts showing that such a driveway is the only means by which Mr. Lake can make economically beneficial use of Parcels A, C, and Lot 1, as opposed to merely the best or most desired way to use that land.

**II.  Mr. Lake has alleged neither the economic impact of the County's actions nor that his investment-backed expectations were reasonable**.

"Anything less than a 'complete elimination of value,' or a 'total loss,' . . . require[s] the kind of analysis applied in Penn Central."  Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 330 (2002) (citing Lucas, 505 U.S. at 1019–1020, n.8).  Penn Central directs courts to "several factors that have particular significance" in determining whether a regulatory taking occurred. 438 U.S. at 124.  These factors include the "economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations."  Id. (citing Goldblatt v. Town of Hempstead, 369 U.S. 590, 594 (1962)).  The "character of the governmental action" is also relevant.  Id.  For example, it is relevant whether the governmental action "amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'"  Lingle, 544 U.S. at 539 (quoting Penn Central, 438 U.S. at 124).  Thus, while Lucas focuses on the total deprivation of a property's value, Penn Central requires "essentially ad hoc, factual inquiries," 438 U.S. at 124, that may devolve into "vexing subsidiary questions" about how a specific regulation affects a specific property owner, Lingle, 544 U.S. at 539.

Even so, Mr. Lake fails to allege any facts which show the economic impact that the County's actions had on him or how the County interfered with Mr. Lake's distinct investment-backed expectations.  To illustrate, the Complaint concludes that "the County's actions . . . have . . . caused severe economic harm by virtue of

drastically diminishing the value of [the Parcels and Lot 1] so as to completely eliminate all value or render [them] with nominal value only."   (See, e.g., Doc. 40 at 18, ¶ 89.)   Yet, as already explained, the Complaint does not adequately describe (or factually support) these economic harms.   Although the Court can perhaps infer that Mr. Lake cannot use his land in the most lucrative manner, the Supreme Court has "uniformly reject[ed] the proposition that diminution in property value, standing alone, can establish a 'taking.'"   Penn Central, 438 U.S. at 131.   Nor is it sufficient for Mr. Lake to allege that he has been denied the most profitable use of his land.   Concrete Pipe and Prods. of Cal., Inc., 508 U.S. at 645; see also Andrus v. Allard, 444 U.S. 51, 65–66 (1979) (applying Penn Central to personal property).

Further, Mr. Lake has not shown that his distinct investment-backed expectations were reasonable in light of the pleaded facts.   In Palazzolo, the Supreme Court held that "acquisition of title after the effective date of [a] regulation[]," alone, will not preclude a takings claim.   533 U.S. at 632.   Central to this holding was the notion that certain land use restrictions "are unreasonable and do not become less so through passage of time or title."   Id. at 627.   But "a prospective enactment, such as a new zoning ordinance, can limit the value of land without effecting a taking because it can be understood as reasonable by all concerned."   Id.   Thus, contrary to Mr. Lake's contentions, "the regulatory regime in place at the time the claimant acquires the property at issue helps to shape the reasonableness of those [distinct investment-backed] expectations."   Id. at 633 (O'Connor, J., concurring); see also Murr, 137 S. Ct. at 1945–46, 1949 ("Petitioners

cannot claim that they reasonably expected to sell or develop their lots separately <u>given the regulations which predated their acquisition of both lots</u>." (emphasis added)).

Here, section 3-9-33(e) predated Mr. Lake's purchase of Parcels A and C. (<u>See</u> Doc. 40 at 5, ¶¶ 17–18.)   The County did not enact the regulation after Mr. Lake purchased Parcel A, expecting "to assemble it with Parcel C to enable integrated commercial use of both [P]arcels."   (<u>Id.</u> at ¶ 16.)   Nevertheless, Mr. Lake argues that he reasonably expected to combine Parcels A and C given the Parcels' commercial surroundings and the fact that County Staff recommended approving each of his applications.   (Doc. 49 at 12.)   But a "reasonable investment-backed expectation must be more than a unilateral expectation or an abstract need."   <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986, 1005 (1984) (citation and internal quotation omitted); <u>cf. City of Eastlake v. Forest City Enters., Inc.</u>, 426 U.S. 668, 674 n.8 (1976) ("By its nature, zoning 'interferes' significantly with owners' uses of property.   It is hornbook law that [m]ere diminution of market value or interference with the property owner's personal plans and desires relative to his property is insufficient to . . . entitle him to a variance or rezoning." (quotation omitted)).

And simply because Mr. Lake's applications may have been reasonable given whatever criteria the County Staff evaluated them under does not mean that the ultimate goal of combining the Parcels was reasonable, particularly when considering that County Staff did not have the final say.   <u>Cf. Penn Central</u>, 438

U.S. at 130 ("[T]he submission that appellants may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable.").   Moreover, nowhere in the Complaint does Mr. Lake allege he intended to combine Parcel C with Parcel A into Lot 1 for the purpose of commercially developing Parcel C.   In fact, the Complaint directly contradicts any such inference because Mr. Lake purchased Parcel C before Parcel A with the expectation of accessing it from a different area—the FDOT's property south of McCall Road.   (Doc. 40 at 4, ¶ 13.)

Accepting his well-pleaded allegations as true, the Court fails to see how Mr. Lake reasonably expected to build a commercial driveway "given the regulations which predated [his] acquisition of [the Parcels]."   Murr, 137 S. Ct. at 1949; see also Grand/Sakwa of Northfield, LLC v. Northfield Twp., 851 N.W.2d 574, 583 (Mich. Ct. App. 2014) ("A claimant who purchases land that is subject to zoning limitations with the intent to seek a modification of those limitations accepts the business risk that the limitations will remain in place or be only partially modified." (discussing Palazzolo, 533 U.S. at 633 (O'Connor, J., concurring))).   "That [Mr. Lake] may not be able to develop exactly what [he] originally wanted," furthermore, "does not mean that [his] investment-backed expectations are eradicated."   Baytree of Inverrary Realty Partners, 873 F.2d at 1410.   "The conclusory allegation that the property has been rendered worthless for private purposes . . . is at least insufficient to withstand a motion to dismiss."   Id.   Again, "[n]either deprivation of the most

beneficial use of the land, nor a severe decrease in the value of property measures up to an unlawful taking." Nasser v. City of Homewood, 671 F.2d 432, 438 (11th Cir. 1982) (citations omitted).

Absent sufficient factual allegations as to these factors, the Court need not analyze the character of the County's actions to find whether Mr. Lake has stated a claim. The "Penn Central inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." Lingle, 544 U.S. at 539–540. Unless and until Mr. Lake amends his Complaint to sufficiently allege the economic impact that the County's actions had on him and how those actions interfered with his distinct, reasonable investment-backed expectations, Mr. Lake fails to state a claim under Penn Central.

## III. Judicial notice of the County's documents does not warrant dismissal.

Federal Rule of Evidence 201(c)(2) states that the Court "must take judicial notice if a party requests it and the [C]ourt is supplied with the necessary information." "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider." Universal Express, Inc. v. S.E.C., 177 F. App'x. 52, 53 (11th Cir. 2006) (citing Bryant, 187 F.3d at 1278 (11th Cir.1999)).[7]

---

[7] Likewise, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment [but] only if the attached document is: (1) central to the plaintiff's claim; and (2)

The County requests that the Court notice several state court filings from a proceeding between Parcel C's previous owners and the FDOT, the same from Mr. Lake's state court lawsuit against the County, and a recorded deed purportedly between Mr. Lake and Parcel C's prior owners.   (Docs. 44-1–44-6.)   The County specifically argues that the documents from the state court condemnation proceeding show that Parcel C's prior owners "were paid for the land taken from them and also paid 'severance damages' to the remaining Parcel C as full compensation for 'all other damages of any nature,' including loss of access to McCall Road."   (Doc. 44 at 2, ¶ 2 (citing Doc. 44-2).)   Given this, the County argues Mr. Lake cannot now allege that "the County caused [Parcel C] to lose value by" enforcement of its land use regulations.   (Id. at 22–23.)

These documents, of course, are all public records and the Court may therefore take judicial notice of them.   Progressive Mountain Ins. Co. v. Middlebrooks, 805 F. App'x 731, 733 (11th Cir. 2020) ("[The court] can reasonably take judicial notice of these state court filings as public records." (citing Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000)).[8]   But the Court need not even take judicial

---

undisputed."   Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).   Both parties, however, conflate this doctrine of "incorporation by reference" with that of "judicial notice."   (Doc. 44 at 25–26; Doc. 47 at 2.)   The two are separate and distinct. See Bryant, 187 F.3d at 1280 n.16 ("[The] [d]efendants . . . were not relying on this doctrine [of incorporation by reference]; rather, [d]efendants seek only consideration . . . pursuant to the judicial notice concept specified by Fed. R. Evid. 201(b).").   As shown below, the documents are not central to Mr. Lake's allegations here thereby making judicial notice the appropriate avenue for consideration.

[8] However, the Court "may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."   United States v. Jones, 29 F.3d 1549, 1553 (11th

notice to infer that Parcel C was physically inaccessible at the time Mr. Lake purchased it.   Despite Mr. Lake's argument that this is an adverse inference, it is perhaps the only inference from the face of the Complaint and accompanying aerial photograph.   (See, e.g., Doc. 40 at 3–5.)   In all events, the County is incorrect in arguing that Mr. Lake cannot state a takings claim as a matter of law solely because Parcel C is landlocked.

The FDOT's actions which ostensibly caused Parcel C to be landlocked in no way prevented its previous owners from afterwards purchasing Parcel A and attempting to use the two in a manner similar to Mr. Lake here.   Only the County's enforcement of its land use regulations prohibiting a commercial driveway over Parcel A would prevent Parcel C's prior owners from such a course of action.   This is what Mr. Lake is suing the County for, not some loss of physical access rights. And "[a] valid takings claim will not evaporate just because a purchaser took title after the law was enacted."   Murr, 137 S. Ct. at 1945 (citing Palazzolo, 533 U.S. at 627).   For these reasons, judicial notice of the County's documents does not bar Mr. Lake from amending his pleading.   That said, Mr. Lake has a steep hill to climb to prevail on the merits should he decide to amend his complaint.

## IV.   The County's argument on res judicata is premature.

Res judicata "will bar a subsequent action if," among other things, "the prior and present causes of action are the same."   Davila, 326 F.3d at 1187 (citation

---

Cir. 1994).   The Court therefore takes judicial notice of the County's documents for the limited judicial actions and description of real property and ownership therein.

omitted).   "Importantly, this bar pertains not only to claims that were raised in the prior action, but also to claims that could have been raised previously."   Id. (citation omitted).   "In determining whether the prior and present causes of action are the same, [the Court] must decide whether the actions arise out of the same nucleus of operative fact, or [are] based upon the same factual predicate."   Id. (quotation omitted).

Here, the Court cannot yet say whether both the instant dispute and Mr. Lake's underlying state court action against the County (see Docs. 44-4–44-6) are the "same" for purposes of res judicata unless and until Mr. Lake files an amended pleading with appropriate factual allegations.   That said, the Court notes that the Complaint contains factual allegations occurring as late as 2019.   But the state court complaint, according to the briefing here, was filed two years before that, in 2017.   This is all to say that the Court need not decide the res judicata issue here and, in all events, this doctrine does not preclude Mr. Lake from filing an amended complaint.

## CONCLUSION

At bottom, the Complaint contains conclusory legal assertions instead of factual allegations showing that the County's actions constituted a regulatory taking under established federal law.   Mr. Lake has not shown that Parcels A, C, and Lot 1 have been stripped of all economically beneficial use simply because he cannot maintain a commercial driveway over Parcel A to access Parcel C—the two of which constitute Lot 1.   And the Complaint neither discusses the economic

impact that the County's actions had on Mr. Lake, nor does it adequately allege what Mr. Lake's investment-backed expectations were, let alone that they were reasonable.

Although Mr. Lake introduces a host of new factual allegations in his response and sur-reply, "the scope of the review [on a Rule 12(b)(6) motion to dismiss] must be limited to the four corners of the complaint." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).   Thus, while the Court readily draws all reasonable inferences in Mr. Lake's favor, the Court is "not required to draw [his] inference[s].   Bald assertions will not overcome a Rule 12(b)(6) motion . . . [and] unwarranted deductions of fact are not admitted as true in a motion to dismiss." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005) (citations omitted); see also Iqbal, 556 U.S. at 681.

The Court appreciates the great frustration Mr. Lake has experienced in developing the land he has purchased.   And this opinion is not a license for the County, or any land use regulatory body for that matter, to needlessly frustrate a landowner's development of property.   Confined by binding precedent, though, the Court is compelled to grant the County's motion to dismiss here.   And, as this Order alludes, it would take significant amendments to the Complaint to survive even the motion to dismiss stage because of that precedent which this Court must heed.   For these reasons, Mr. Lake has failed to state a regulatory takings claim under either Lucas or Penn Central.

Accordingly, it is **ORDERED**:

1.    The County's motion to dismiss (Doc. 44) is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.

2.    The Complaint (Doc. 40) is **DISMISSED WITHOUT PREJUDICE** to Mr. Lake's ability to amend his pleading for failure to state a claim.

3.    On or before December 9, 2021, Mr. Lake may file an amended pleading consistent with this Order.

4.    To the extent that the Motion seeks any greater or different relief than this Order grants, it is **DENIED WITHOUT PREJUDICE** to the County's ability to renew its argument concerning res judicata.

**ORDERED** at Fort Myers, Florida, on November 18, 2021.

_John L. Badalamenti_

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

- 24 -